UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Wells Fargo Bank, N.A., | Civil No. 11-3267 DSD/FLN |
| Petitioner, | |
| vs. | **MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT** |
| Laurie A. Hayes, USAA Federal Savings Bank, United States of America, et al., | |
| Defendant. | |

---

Petitioner, Wells Fargo Bank, N.A. ("Wells Fargo"), submits this Memorandum of Law in support of its motion for summary judgment.  Defendant United States of America - Internal Revenue Service (the "IRS") filed a lien for unpaid income taxes upon real property (the "Property") owned by Defendant Laurie A. Hayes ("Hayes") two days prior to the date Hayes conveyed a mortgage to Wells Fargo as security for a refinancing loan.  Hayes misrepresented her tax indebtedness to Wells Fargo, and there was no notice of this tax lien memorialized on the certificate of title for the Property (which is registered as Torrens land) on the date of the mortgage given to Wells Fargo.  With no knowledge of the tax lien, Wells Fargo advanced loan proceeds to fully pay and satisfy a prior mortgage, thus elevating the IRS' tax lien to a position of priority it would not otherwise have been able to obtain without paying and satisfying the prior mortgage debt itself.

1

The IRS seeks an unjust windfall at Wells Fargo's expense. Wells Fargo asks the Court to prevent this outcome by elevating the mortgage held by Wells Fargo to a position prior to the IRS' tax lien pursuant to the doctrine of equitable subrogation.

## STATEMENT OF UNDISPUTABLE FACTS

### I. THE PROPERTY.

The Property is Torrens land located in Washington County, Minnesota. It is known as 812 William Street North, Stillwater, Minnesota. Affidavit of Matthew A. Anderson ("Anderson Aff.") ¶2. On July 16, 2003 the Washington County Registrar of Titles entered Certificate of Title No. 59023 to Hayes for the Property. Anderson Aff. Ex. A.

### II. THE WELLS FARGO REFINANCING TRANSACTION.

This action concerns the May 2010 mortgage loan given by Wells Fargo to Hayes which refinanced a prior mortgage loan, also advanced by Wells Fargo. Anderson Aff., ¶ 2. The first mortgage given to Wells Fargo was dated August 15, 2005 and filed September 12, 2005 as Washington County Registrar of Titles Document No. 1160405 (the "Original Mortgage"). Id., Ex. B. Hayes subsequently conveyed a second mortgage in the original principal amount of $100,000 in favor of USAA Federal Savings Bank dated September 27, 2007 and filed November 2, 2007 as Washington County Registrar of Titles Document No. 1181177 (the "USAA Mortgage"). Id., Ex. C.

To secure the loan refinancing the Original Mortgage, Hayes conveyed a mortgage dated May 28, 2010 and recorded June 18, 2010 as Washington County Registrar of Titles Document No. 1199564, in the original principal amount of $154,623 (the "New

Mortgage"). Id., Ex E. The proceeds of the loan secured by the New Mortgage were applied to pay in full and satisfy the Original Mortgage. Indeed, the HUD-1 settlement statement for the refinancing transaction shows that the sum paid to satisfy the Original Mortgage was $154,623.00, the exact same principal sum of the New Mortgage.[1] Id., Ex. J. To preserve its status as a first-priority mortgage, Wells Fargo obtained a subordination of the USAA Mortgage from USAA, which was recorded June 18, 2010 as Washington County Registrar of Titles Document No. 1199565. Id., Ex. E.

The New Mortgage loan transaction closed on Friday, May 28, 2010, and the transaction was completed by June 2, 2010 (after the passage of the three-day right of rescission required by federal law and the Memorial Day weekend). Id., Ex. J and Ex. K, p. 1 ("Policy Complete 06/02/2010 7:22AM").

### III.   THE FEDERAL TAX LIEN.

The IRS filed a Notice of Federal Tax Lien with the Washington County Recorder[2] in favor of the United States' Internal Revenue Service, dated May 21, 2010 and recorded May 26, 2010 as Document No. 3792968 (the "Tax Lien"). Id., Ex. F. The Tax Lien does not appear on the Certificate of Title for the Property. Id., Ex. A. Rather, the Tax Lien was recorded in the abstract real property records two days before the closing of the New Mortgage. Id., Ex. F.

---

[1] The actual sum due for the Old Mortgage was $154,622.77, rounded up by 23 cents to $154,623. See the E-Lender Solutions Order Status, setting forth events from the Hayes refinance transaction, Anderson Aff. Ex. K, p. 3.

[2] In Minnesota, the county recorder maintains public land title records for abstract real property, while the county registrar of titles maintains public land title records for Torrens real property (like the Property here). The Notice of Tax Lien filed by the IRS appeared in the abstract public land title records but not the Torrens real property records.

3

**IV.    HAYES' DISCLOSURES TO WELLS FARGO.**

In her mortgage loan application to Wells Fargo, Hayes was required (under threat of a criminal penalty)[3] to truthfully disclose, among other things, all outstanding indebtedness.  Id., Ex. G.  Although she disclosed her existing outstanding mortgage debt to Wells Fargo and USAA, she did not disclose any tax indebtedness.  Id.

Wells Fargo also obtained a credit report showing Hayes' outstanding indebtedness, which likewise did not reveal any outstanding tax indebtedness.  Id., Ex. I.  Finally, Wells Fargo obtained an affidavit from Hayes sworn on May 18, 2010 wherein Hayes disclosed (among other things) any tax liens encumbering the Property.  Id., Ex. H.  Her affidavit states:

> I confirm that there are no liens, judgments,, [*sic*] pending lawsuits, federal or state tax liens … or other encumbrances on the Property except:  <u>Minnesota State Tax Lien 0040 5044 7820100315 $3508.47</u>.  No other lien or encumbrance upon the Property has been given, contracted for, agreed to, executed, or suffered by me in favor of any other person.

Id., ¶ 6 (underlining original for handwritten text).

Thus on this affidavit, Hayes disclosed a state tax lien in favor of the State of Minnesota, but did not disclose any federal tax lien in favor of the IRS.  Id.  Hayes did not update this affidavit or otherwise disclose the existence of a federal tax lien prior to the closing of the New Mortgage.

---

[3] It is a crime to make a false statement on a Fannie Mae 1003 mortgage loan application form, a fact which is stated on the face of the form itself.  Anderson Aff., Ex. G.

4

**ARGUMENT**

The loan funds advanced by Wells Fargo paid and satisfied $154,623 of mortgage debt that would have otherwise been prior to the Tax Lien. Wells Fargo did so without knowledge of the Tax Lien, the existence of which was concealed from Wells Fargo by Hayes and which did not appear on the Certificate of Title for the Property. If the Court grants the relief sought by Wells Fargo, the IRS will be in exactly the position it was prior to the closing of the New Mortgage. If, on the other hand, the Court refuses to grant the relief sought by Wells Fargo, the IRS will obtain the windfall benefit of Wells Fargo's full payment of the prior mortgage debt encumbering the Property. It would be grossly inequitable for the IRS to obtain a windfall at Wells Fargo's expense in circumstances such as these. Wells Fargo therefore respectfully requests that the Court exercise its equitable discretion; grant Wells Fargo's motion for summary judgment; and elevate the New Mortgage to a position prior to the IRS Tax Lien pursuant to the doctrine of equitable subrogation.

**I.      STANDARD OF REVIEW FOR A MOTION FOR SUMMARY JUDGMENT.**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is not genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a fact is "material" if its resolution might affect the outcome of the action under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if the evidence would allow a reasonable finder-of-fact to decide for the non-moving party. *Ohio Cas. Ins. Co. v. Union Pac. R.R.*,

469 F.3d 21158, 1162 (8th Cir. 2006). The Court "must view the evidence and the inferences that may be reasonable drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F. 3d 465, 468 (8th Cir. 2004).

**II.    OVERVIEW OF LAW RELATING TO FEDERAL TAX LIENS.**

As set forth below, the IRS' right to a lien encumbering the Property for unpaid income taxes is subject to Wells Fargo's state law rights to be subrogated to the position of the Original Mortgage.

Where a person liable for unpaid taxes neglects or refuses to pay the tax after demand, the United States is entitled, by statute, to a lien in the amount of the tax plus interest, penalties and costs "upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. A tax lien arises "at the time the assessment is made" and continues until either satisfaction of the taxpayer's debt or the expiration of the lien, generally a period of ten years. 26 U.S.C. §§ 6322, 6502 and 6503. Though a federal tax lien may exist, notice of the lien is required to enforce it against third parties. Under the Internal Revenue Code, a federal tax lien "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof … has been filed by the Secretary." 26 U.S.C. § 6323(a). In the case of real property, the method of filing of the notice of tax liens is governed by state law. 26 U.S.C. § 6323(f)(1)(A). The filing procedure for federal tax liens in Minnesota is set forth in the Federal Lien Registration Act, Minn. Stat. §§272.479 – 272.486, and in Minn. Stat. §272.488 (permitting electronic filing of notices of federal

tax liens). Unlike state tax liens which must be filed as a memorial on a certificate of title in order to affect Torrens property and the rights of third parties, federal tax liens need not be memorialized on a certificate but rather need only be filed with the County Recorder. Minn. Stat. §508.25(1); *United States v. Rasmuson*, 253 F.2d 944 (8th Cir. 1958). A federal tax lien becomes perfected on the date the notice of federal tax lien is filed. *Bremen Bank & Trust Co. v. United States*, 131 F.3d 1259, 1262 (8th Cir. 1997). A real estate mortgage becomes "choate" (or perfected) under Federal law when "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Minn. Dept. of Revenue v. United States,* 184 F.3d 725, 728 (8th Cir. 1999).

The priority of a federal tax lien created under 26 U.S.C. § 6321 as against a mortgage created under state law is governed by the common-law rule: "the first in time is the first in right." *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 87, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). There is, however, an important statutory exception to the rule:

> Where, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324.

26 U.S.C. §6323(i)(2). Accordingly, Minnesota law applies to determine whether Wells Fargo is entitled to subrogate its New Mortgage to the priority position of the Original Mortgage, and thus obtain senior lien priority over the IRS Tax Lien. As set forth below, application of equitable subrogation is appropriate here pursuant to the law developed by Minnesota appellate courts. Wells Fargo therefore respectfully requests that the Court grant its motion for summary judgment.

7

### III. THE MORTGAGE IS PRIOR TO THE TAX LIEN PURSUANT TO THE DOCTRINE OF EQUITABLE SUBROGATION.

All the elements of equitable subrogation are present here, and it would be appropriate for the Court to exercise its equitable discretion to prevent an IRS windfall at Wells Fargo's expense. "Under the doctrine of equitable subrogation, a person who has discharged the debt of another may succeed in substitution to the rights and position of the satisfied creditor." *Wells Fargo Home Mortgage, Inc. v. Chojnacki*, 668 N.W.2d 1, 5 (Minn. Ct. App. 2003), citing *First Nat'l Bank of Menahga v. Schunk*, 201 Minn. 359, 363, 276 N.W. 290, 292-93 (1937). "This equitable principle will be applied in the interest of substantial justice when one party provides funds used to discharge another's obligations if (1) the party seeking subrogation has acted under a justifiable or excusable mistake of fact and (2) injury to innocent parties will otherwise result." *Id.*, citing *Carl H. Peterson Co. v. Zero Estates*, 261 N.W.2d 346, 348 (Minn. 1977). Granting equitable relief is within the sound discretion of the Court. *Citizens State Bank v. Raven Trading Partners, Inc.*, 786 N.W.2d 274, 277 (Minn. 2010), citing *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 524 (Minn. 1979) and *City of Cloquet v. Cloquet Sand & Gravel, Inc.*, 312 Minn. 277, 279, 251 N.W.2d 642, 644 (1977). "Equitable subrogation has a long history in Minnesota and has existed alongside the Minnesota Recording Act." *Citizens State Bank*, 786 N.W.2d at 278, citing *Emmert v. Thompson*, 49 Minn. 386, 391-92, 52 N.W. 31, 31-32 (1892).

Here, the following facts are indisputable: 1) the Original Mortgage was prior to the Tax Lien; 2) the IRS would have had to pay and satisfy the indebtedness secured by

the Original Mortgage in order to obtain a position of lien priority over the Original Mortgage; 3) Wells Fargo satisfied the indebtedness secured by the Original Mortgage with the loan proceeds secured by the New Mortgage; and 4) Wells Fargo will suffer an injury to the security for its mortgage loan to Hayes if the Tax Lien remains prior to the New Mortgage.  As Wells Fargo discharged what would have otherwise been an obligation of the IRS to the detriment of Wells Fargo, application of the doctrine of equitable subrogation is appropriate here subject to the Court's determination that Wells Fargo acted "under a justifiable or excusable mistake of fact" as required by Minnesota law.

Wells Fargo did, in fact, act under a justifiable or excusable mistake of fact because it undertook the closing of the loan secured by the New Mortgage without knowledge of the Tax Lien or of Hayes' tax indebtedness to the IRS.  The Tax Lien did not appear on the Certificate of Title for the Property, but was instead filed in the abstract property records with the Washington County Recorder.  Additionally, Wells Fargo solicited multiple representations from Hayes regarding all outstanding indebtedness owed by Hayes as well as all liens encumbering the Property.  In response to these solicitations, Hayes misrepresented and concealed the status of the Tax Lien and her outstanding tax indebtedness on her loan application and closing documents.  One of these representations was made in the form of a sworn affidavit, and another of these representations was made on Fannie Mae Form 1003 Loan Application.  At no time did Hayes disclose the existence of the Tax Lien or any tax indebtedness owed to the IRS.

To the extent that the IRS or Hayes argues that Hayes' representations to Wells Fargo were accurate at the time she made them (because the IRS did not file its Notice of Tax Lien until after Hayes had executed her loan application and borrowers' affidavit), the Minnesota Court of Appeals has recently concluded that a borrower has an affirmative duty to update disclosures to a mortgage lender if the information originally disclosed changes prior to the closing of the loan transaction. *HSBC Mortgage Services, Inc. v. Graikowski*, ___ N.W.2d ___, 2012 WL 987318, p. 4-5 (Minn. Ct. App. 2012) (concluding that a borrower had a duty to disclose changes to the borrower's marital status prior to the closing of a mortgage loan). Hayes failed to fulfill her duty to Wells Fargo by failing to disclose the existence of the Tax Lien to the extent that she did not already know about it at the time she provided her loan application and borrower's affidavit to Wells Fargo.

To the extent that the IRS or Hayes argues that Wells Fargo's constructive notice of the Tax Lien filed two days before closing bars application of equitable subrogation, the Minnesota Supreme Court explained in *Citizen's State Bank* that equitable subrogation is available even if a lender had constructive notice of an intervening lien. *Citizen's State Bank*, 786 N.W.2d 278 at n. 6 ("we have not automatically rejected equitable subrogation when the party seeking subrogation has actual or constructive notice of an existing lien"). Importantly, in two prior long-standing decisions, the Minnesota Supreme Court recognized that mistakes by a title examiner employed by a third party constitutes an excusable mistake sufficient to justify application of the

doctrine of equitable subrogation. *Elliot v. Tainter*, 88 Minn. 377, 378-79, 93 N.W. 124, 124-25 (1903); *Emmert v. Thompson*, 49 Minn. 386, 52 N.W. 31 (1892).

*The Emmert* case is particularly instructive. It involved a farm subject to two prior mortgages. Property owner Marr sought to refinance his debt to both mortgagees, and to that end applied for a loan from Cornwell. Notably:

> Cornwell believed—and it was implied from what Marr stated when applying for the loan—there were no other incumbrances, and that, with these paid off and discharged, his mortgage would take their place, and become the first and only charge upon the property.

*Id.*, 49 Minn. at 390, 52 N.W. at 31. Yet Cornwell's belief and Marr's loan application were both incorrect. Marr's property was in fact subject to another undisclosed mortgage in existence and of record at the time Cornwell's mortgage was executed, in favor of the plaintiff. Id., 49 Minn. at 391, 52 N.W. at 31. Cornwell's agents had made an abstracting error, overlooking the intervening mortgage. The plaintiff urged to Court to find Cornwell "culpably negligent." The Court rejected the plaintiff's argument, stating:

> It was a mistake of fact, and, in our judgment, not of such a character as to bar the respondents' claim to equitable relief. *That, in a proper case of mistake of fact, such relief may be afforded notwithstanding the intervening mortgage was of record when the error was committed, is well settled.* Cornwell misunderstood, and was justifiably ignorant of, the facts, and acted, through his agents, upon the assumption that he and they knew the true state of the title when the liens which his money had discharged were satisfied of record, and plaintiff's mortgage advance to the position of the senior incumbrance, without a single act of his, and to the very great detriment of the person who had brought it about. The court was right in applying the principle of subrogation, or "equitable assignment," as it is frequently called.

*Id.*, 49 Minn. at 393, 52 N.W. at 32 (emphasis added and citation omitted).

11

The facts in the present situation are analogous to the facts in *Emmert*. Both cases involve a borrower seeking to refinance prior indebtedness. In both cases, the borrower gave the lender a loan application which did not disclose the debt to (and lien of) an intervening lien creditor. In both cases, the lender expected to be in first priority position upon payment of the prior indebtedness. In both cases, the intervening creditor's lien was already of record at the time of the closing of the new mortgage. And in both cases, the new lender had no actual knowledge of the intervening lien. Just as the Court awarded equitable subrogation to Cornwell in *Emmert*, a court should award Wells Fargo equitable subrogation in the instant matter.

Wells Fargo justifiably believed that there were no tax liens encumbering the Property at the time it advanced the loan to Hayes to refinance the loan secured by the Original Mortgage. Operating under this mistake of fact, Wells Fargo then proceeded to pay and satisfy $154,623 of mortgage debt that would otherwise have been prior to the Tax Lien. To avoid an undeserved windfall to the IRS at the expense of Wells Fargo, it would be appropriate for the Court to exercise its equitable discretion here and subrogate the New Mortgage held by Wells Fargo to the position of the Original Mortgage prior to the Tax Lien. Wells Fargo therefore asks that the Court grant its motion for summary judgment.

## **CONCLUSION**

It would be grossly inequitable for the IRS to obtain a windfall at Wells Fargo's expense due to Wells Fargo's satisfaction of the prior mortgage debt encumbering the Property. Wells Fargo asks that the Court instead restore the IRS, through application of

the doctrine of equitable subrogation, to exactly the position it would have enjoyed had Wells Fargo not paid and satisfied the Original Mortgage. For this reason and the other reasons set forth above, Wells Fargo is entitled to judgment as a matter of law and respectfully asks that the Court grant its motion.

                              Respectfully submitted,

                              MACKALL, CROUNSE & MOORE, PLC

Dated: March 30, 2012        By: s/Matthew A. Anderson
                                    Matthew A. Anderson (MN ID No. 0284257)
                                    Patrick B. Steinhoff (MN ID No. 340352)
                              1400 AT&T Tower
                              901 Marquette Avenue
                              Minneapolis, Minnesota 55402-2859
                              (612) 305-1400
                              ***ATTORNEYS FOR PETITIONER***

2297955.1-MAA